UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


COAST EQUITIES, LLC,

               Plaintiff,

     v.

RIGHT BUY PROPERTIES, LLC; INVESTUS
(MICHIGAN), LLC; EXIT STRATEGY APRIL
13, LLC; EXIT STRATEGY AUGUST 12,
LLC; EXIT STRATEGY DECEMBER 12, LLC;
EXIT STRATEGY FEBRUARY 13, LLC;
EXIT STRATEGY JANUARY 13, LLC;
EXIT STRATEGY JUNE 13, LLC;
EXIT STRATEGY MARCH 13, LLC;
EXIT STRATEGY MAY 13, LLC;
EXIT STRATEGY NOVEMBER 12, LLC;
EXIT STRATEGY SEPTEMBER 12, LLC;
EXIT STRATEGY DECEMBER 13, LLC;
RONALD MACKIE; MARTIN GREER;
STEVE GREER; and JOHN J. GRACE,

               Defendants.

Case No. 3:14-cv-01076 -ST

FINDINGS AND
RECOMMENDATIONS


STEWART, Magistrate Judge:

## INTRODUCTION

     On July 3, 2014, Coast Equities LLC ("Coast Equities"), filed this action alleging claims

for breach of contract and fraud against four individuals (Ronald Mackie ("Mackie"), Martin

Greer, Steve Greer, and John J. Grace ("Grace")), as well as against 13 limited liability

companies (Right Buy Properties, LLC ("Right Buy"); Investus (Michigan), LLC ("Investus");

and 11 "Exit Strategy LLCs" distinguished by the month and day incorporated into their entity names[1]).

Coast Equities alleges that on or about March 13, 2014, pursuant to a Real Estate Purchase and Sale Agreement ("PSA"), Right Buy and the Exit Strategy LLCs agreed to sell certain real estate in Florida ("Properties") for $9.5 million (later reduced to $8.6 million) to Mt. Helix Real Estate Investment Fund, LLC ("Mt. Helix").  Complaint, ¶ 2.  On or about April 10, 2014, with the consent of Right Buy and the Exit Strategy LLCs, Mt. Helix assigned all of its interest in the PSA to Coast Equities.  *Id.*  Coast Equities alleges that the LLC defendants breached the PSA by failing to cure or remove certain unacceptable title defects in the Properties, attempting to substitute other properties to replace those with defective title, misrepresenting the condition of the Properties, misrepresenting the status of municipal liens against the Properties, and misrepresenting that certain of the Properties were habitable.  *Id*, ¶ 5.  Coast Equities further alleges that the individual defendants caused the LLC defendants to refuse to cure the title defect and maintenance issues, resulting in default and causing the PSA to fail to close.  *Id*, ¶ 7.  In its First Claim for breach of contract, Coast Equities seeks specific performance of the PSA and equitable damages exceeding $2 million.  *Id*, ¶ 10.  In its Second Claim for fraud, Coast Equities seeks over $2 million in damages and an unspecified amount of punitive damages.  *Id*, ¶¶ 16. 18

Coast Equities alleges that this court has diversity jurisdiction under 28 USC § 1332. Coast Equities is a Nevada LLC whose members are citizens of Oregon and California. Complaint, ¶ 1.  The 13 LLC defendants (Right Buy, Investus, and the Exit Strategy LLCs) are privately held LLCs incorporated in Michigan whose owners are citizens of the United Kingdom

---

[1] The "Exit Strategy LLCs" include Exit Strategy April 13, LLC; Exit Strategy August 12, LLC; Exit Strategy December 12, LLC; Exit Strategy February 13, LLC; Exit Strategy January 13, LLC; Exit Strategy June 13, LLC; Exit Strategy March 13, LLC; Exit Strategy May 13, LLC; Exit Strategy November 12, LLC; Exit Strategy September 12, LLC; and Exit Strategy December 13, LLC.

and residents of either the United Kingdom or the Republic of South Africa.  Mackie Decl.

(docket #45), ¶¶ 2-3; Wright Decl. (docket #78),  ¶¶ 1-3, 7; Amended Corporate Disclosure

Statement (Right Buy) (docket #85); Amended Corporate Disclosure Statement (Investus & the

Exit Strategy LLCs) (docket #86).  Martin Greer and Steve Greer are citizens of the United

Kingdom and permanent residents of Florida.  Martin Greer Decl. ("M. Greer Decl.") (docket

#72), ¶ 2; Steve Greer Decl. ("S. Greer Decl.") (docket #73), ¶ 2.  Grace apparently works for

Right Buy and is alleged to be a citizen of Ireland.  Complaint, ¶ 1 (listing individual defendants

as citizens of Florida, South Africa, and Ireland); M. Greer Decl., ¶ 13; S. Greer Decl., ¶ 15.

On November 7, 2014, Coast Equities dismissed Martin Greer and Steve Greer as

defendants.  Notice of Dismissal (docket #80).  Nothing in the record indicates that Grace has

been served or filed any appearance.  Right Buy and Mackie have now filed a Motion to Dismiss

for Lack of Jurisdiction or, in the Alternative, for Improper Venue (docket #44).  Investus and

the Exit Strategy LLCs also have filed a Motion to Dismiss for Lack of Jurisdiction, Improper

Venue, and *Forum Non Conveniens* (docket #77).  For the reasons that follow, both motions

should be granted because Coast Equity has failed to make a sufficient showing that this court

has personal jurisdiction over any defendant and is a proper venue for this litigation.

## FINDINGS

### I. Personal Jurisdiction

All remaining defendants contend that this court lacks personal jurisdiction over them

because they lack the requisite minimum contacts with the State of Oregon.  Although it is a

somewhat closer call as to Mackie and Right Buy, this court is convinced that the evidence is not

sufficient to warrant the exercise of personal jurisdiction over any of the defendants.

///

A. **Legal Standard**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F3d 797, 800 (9th Cir 2004), citing *Sher v. Johnson*, 911 F2d 1357, 1361 (9th Cir 1990). In ruling on the jurisdictional issue, the court may consider evidence presented in affidavits and may order discovery on jurisdictional issues. *Doe v. Unocal Corp.*, 248 F3d 915, 922 (9th Cir 2001), citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F2d 1280, 1285 (9th Cir 1977). Where, as here, the court does not hold an evidentiary hearing, the plaintiff need only submit evidence which, if true, supports a *prima facie* case of personal jurisdiction over the defendant. *Ballard v. Savage*, 65 F3d 1495, 1498 (9th Cir 1995) (citations omitted). While the plaintiff may not rely solely on the bare allegations in the pleadings, any uncontroverted allegations in the complaint must be accepted as true. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F3d 1066, 1073 (9th Cir 2011) (citations omitted).

When no federal statute authorizes jurisdiction, the district court applies the law of the state in which it sits. FRCP 4(k)(1)(a); *King v. Am. Family Mut. Ins. Co.*, 632 F3d 570, 578 (9th Cir 2011 (citation omitted); *Panavision Int'l, L.P. v. Toeppen*, 141 F3d 1316, 1320 (9th Cir 1998). Oregon permits a court to exercise jurisdiction over any party so long as the "prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." ORCP 4L. Thus, the long-arm statute of Oregon is coextensive with the limits of federal due process. *Walden v. Fiore*, __ US ___, 134 S Ct 1115, 1121 (2014).

Federal due process permits the exercise of personal jurisdiction over a non-resident defendant who has "substantial" or "continuous and systematic" contacts with the forum state.

*CollegeSource*, 653 F3d at 1075; *Schwarzenegger*, 374 F3d at 800.  However, nothing in the record indicates any such contacts with Oregon by any defendant.  Thus, the issue is whether defendants are subject to "specific" or "limited" personal jurisdiction in Oregon.  *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F3d 716, 741 (9th Cir 2013), *petition for cert. filed*, 83 USLW 3018 (June 30, 2014) (No. 14-1); *Doe v. Am. Nat'l Red Cross*, 112 F3d 1048, 1052 (9th Cir 1997).

The Ninth Circuit has established a three-pronged test for determining whether the exercise of specific personal jurisdiction over a non-resident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F3d at 802, quoting *Lake v. Lake*, 817 F2d 1416, 1421 (9th Cir 1987).

If the plaintiff satisfies the first two prongs of this test, then the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id* (citation omitted). The first prong of this test includes two interrelated concepts – purposeful direction and purposeful availment – and "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F3d 1199, 1206 (9th Cir), *cert denied*, 547 US 1163 (2006).  A "purposeful availment analysis is

most often used in suits sounding in contract" while a "purposeful direction analysis . . . is most often used in suits sounding in tort." *Schwarzenegger*, 374 F3d at 802 (citations omitted).

**B.  Analysis**

**1.  Communications Between Hudler and Mackie**

Coast Equities asserts personal jurisdiction over defendants based on a series of telephone calls and emails between its manager, Martin Hudler ("Hudler"), and Right Buy's owner and president, Mackie, between late March 2014 and the filing of this lawsuit on July 3, 2014.

Hudler avers that in February 2014, he negotiated an agreement with Mt. Helix which "set out the terms by which Coast [Equities] and [Mt.] Helix would purchase properties and participate in any gain from those properties when sold."  Hudler Decl., ¶ 2 & Ex. 1.[2]  He then began dealing with Mackie on behalf of "Right Buy and its affiliates [which] owned properties in Florida that Coast [Equities] was interested in buying and then selling to [Mt.] Helix or another company."  *Id*, ¶ 3.  On March 13, 2014, Mt. Helix entered into the PSA to purchase 369 units of real estate located in Florida (the "Properties") from the LLC defendants for $9.5 million.  *Id*, ¶ 7 & Ex. 4.  The PSA was amended on March 19, 2014.  *Id*, ¶ 9 & Ex. 6, p. 1 (referencing PSA of March 13, 2014 and First Amendment of March 19, 2014).  The purported "Seller" in the PSA is Right Buy and the Exit Strategy defendants (listed on Exhibit A to the PSA), purportedly represented by Aleks Mitrius.  However, one of the members of the Exit Strategy defendants, Steven Wright, avers that no member, manager, or actual authorized agent of those entities ever participated in negotiating, amending, or executing the PSA.  Wright Decl. (docket #78), ¶ 24.

---

[2]  Under the terms of that agreement dated February 5, 2014, Coast Equities could offer to assign to Mt. Helix certain properties which Coast Equities was negotiating to acquire.  *Id*, Ex. 1.  This case involves the opposite, namely the PSA that Mt. Helix assigned to Coast Equities.  For purposes of the pending motions, this court will assume the agreement between Coast Equities and Mt. Helix also covered that assignment.

Beginning in late March 2014, Hudler and Mackie spoke by telephone several times. Hudler Decl., ¶ 3 & Ex. 2, pp. 1, 3.  On April 10, 2014, Mt. Helix assigned its interest in the PSA to Coast Equities.  *Id*, ¶ 8 & Ex. 5.  The following day, in a Second Amendment to the PSA signed by Hudler, Mackie (as Right Buy's CEO) and Renee Montreuil (as "Authorized Agent"), Coast Equities (identified as a "Nevada limited liability company") was substituted for Mt. Helix as the Purchaser in the PSA.  *Id*, ¶ 9 & Ex. 6.  The PSA was set to close on April 23, 2014.  *Id*, Ex. 6, p. 2 & Ex. 8, p. 4.  Coast Equities alleges that the PSA never closed due to various misrepresentations as to the condition of the Properties, the existence of municipal liens, and refusal to cure title defects and maintenance issues.

### 2.  The Michigan State Court Action

The owners of the Exit Strategy LLCs have submitted evidence that some of the Properties that are the subject of the PSA are also the subject of pending litigation in Michigan state court.  Steven Wright, one of the two members and the manager of Investus and the Exit Strategy LLCs, avers that he and co-member, Lee Smith, were solicited by Right Buy, Mackie, Grace, and others, to make real estate investments in Florida, Ohio, and Michigan.  Wright Decl., ¶¶ 3-5, 9.  In response, between 2009 and 2014, they provided over $100 million to Right Buy to purchase, rehabilitate, and resell residential properties in the United States.  *Id*, ¶¶ 10-11.  As a result, Right Buy acquired, on their behalf, hundreds of residential properties in Michigan, Florida, and Ohio.  *Id*, ¶ 12.

By early 2014, however, Wright and Smith became suspicious that Right Buy, Mackie, and Grace were involved in a massive real estate fraud scheme.  *Id*, ¶ 13.  Smith and Wright traveled to the United States, investigated, and determined that more than 600 of the properties

purchased had not been refurbished and that Right Buy had sold them the same properties multiple times. *Id*, ¶¶ 14-15.

On July 9, 2014, a week after Coast Equities filed this action, Investus and the Exit Strategy LLCs, among others, filed suit against Mackie, Right Buy, Grace, and others, in Wayne County Circuit Court for the State of Michigan, alleging breach of contract, as well as a host of other state tort and statutory claims. *Id*, ¶ 16 & Ex. A. In that Michigan action, the plaintiffs seek an accounting of Right Buy's financial records, the appointment of a receiver, and the grant of an injunction prohibiting the sale or transfer of any of the properties acquired with plaintiffs' funds. *Id*, ¶ 17.

On July 17, 2014, in the Michigan action, Judge Kathleen MacDonald enjoined Right Buy and any of its affiliates from taking certain actions respecting the properties identified by the plaintiffs. *Id*, ¶ 18 & Ex. B. The properties subject to the injunction include all the Properties listed in the PSA that is the subject of this action. Wright Decl., ¶¶ 18-22. Wright avers that the only connection that Investus and the Exit Strategy LLCs have to this action is that they are the actual owners of the Properties that are the subject of the PSA. *Id*, ¶ 30.

### 3. No Personal Jurisdiction Over Investus or the Exit Strategy LLCs

Coast Equities has wholly failed to establish that this court has personal jurisdiction over Investus or the Exit Strategy LLCs. Its basis for personal jurisdiction focuses on contacts between its manager, Hudler, and Mackie, Right Buy's owner. The only information in the record about any contact between Hudler and the Exit Strategy LLCs is that, five days after filing the Michigan action, Hudler contacted Wright by email and, in response, Wright informed Hudler that the Exit Strategy LLCs are not parties to the PSA and referred Hudler to their legal counsel in Michigan. *Id*, ¶ 29. To Wright's knowledge, no member, manager, or authorized

agent of Investus or the Exit Strategy LLCs ever was aware of, negotiated, consented to, or executed the PSA, traveled to Oregon, or solicited business in Oregon. *Id*, ¶¶ 24-27. Coast Equities has not countered this evidence and, as a result, has failed to make a sufficient showing sufficient to establish that this court has personal jurisdiction over Investus or the Exit Strategy LLCs.

### 4. No Personal Jurisdiction Over Mackie or Right Buy

Hudler's contacts with Mackie are slightly more significant, but still insufficient to warrant the exercise of personal jurisdiction over Mackie or Right Buy. Coast Equities argues that Mackie and Right Buy "purposefully availed" themselves of the privilege of conducting activities in Oregon and "purposefully directed" their activities at Oregon residents by engaging in negotiations with its manager and its attorney, both of whom are Oregon residents. This court does not agree that Coast Equities has met its burden of establishing specific personal jurisdiction over Mackie or Right Buy under either concept.

### 1. Relevant Contacts Do Not Include Those After April 2014

To show minimum contacts with Oregon, Coast Equities relies in part on telephone calls exchanged between Hudler and Mackie between March 24, 2014, and the filing of this case on July 3, 2014 (Hudler Decl., Ex. 2), April 11-24, 2014 emails exchanged between them, and April 24-29, 2014 emails between Mackie and Coast Equities' attorney. *Id*, Exs. 7-8. Mackie contends that Hudler initiated contact with him. Mackie Decl. (docket #75), ¶ 3. In contrast, the telephone logs submitted by Coast Equities indicate that Mackie may have initiated the first telephone call with Hudler. Hudler Decl., Ex. 2, p. 3. However, personal jurisdiction turns not on who initiates the first contact, but on whether there are sufficient minimum contacts with the forum to find personal jurisdiction over a non-resident defendant.

For purposes of determining whether a defendant purposefully availed itself of conducting activities in the forum, "[o]nly contacts occurring prior to the event causing the litigation may be considered." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F2d 911, 913 (9th Cir 1990) (citation omitted). Coast Equities' claims hinge largely on its allegation that the PSA never closed because defendants made various misrepresentations relating to the existence of liens and title defects and the habitability of certain of the Properties subject to the PSA. Complaint, ¶¶ 4-7. The PSA was set to close on April 23, 2014. Hudler Decl., Ex. 6, p. 2 & Ex. 8, p. 4. The following day, April 24, 2014, Coast Equities' attorney contacted Mackie. *Id*, Ex. 8, p. 20. In that initial communication, at least one of the disagreements that forms the basis of the present suit was already on the table. *Id* ("Please take notice that Coast objects to the encumbrances, liens and violations stated in the title reports received by Coast concerning the subject properties"). Within five days thereafter, the remaining issues were under discussion. *Id*, Ex. 7, pp. 1-2 (discussing municipal liens, "substitution" of other properties, and "landscaping" and "maintenance" issues). The relevant period for evaluating specific personal jurisdiction over Mackie and Right Buy predates those communications and, thus, eliminates more than half of the telephone calls and emails on which Coast Equities relies. *Id*, Exs. 2 & 8.

By the time Coast Equities' attorney was involved, the conduct which forms the basis of its claims had already transpired. The residence of Coast Equities' attorney is irrelevant and may not be used to bolster Coast Equities' assertion that this court has personal jurisdiction over Mackie and Right Buy. Thus, the issue is whether the communications between Hudler and Mackie between late March and late April 2014 are sufficient to establish specific personal jurisdiction over Mackie and Right Buy in Oregon.

///

## 2. <u>Prior Negotiations & Future Consequences</u>

In addition to the communications between Hudler and Mackie, Coast Equities relies on the existence of the PSA, its amendments, and its assignment to Coast Equities, a Nevada LLC with one member who is a citizen of Oregon.

The mere existence of a contract with an Oregon resident or, as here, with an LLC with one Oregon member, is insufficient to confer jurisdiction over a non-resident defendant. "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 US 462, 478 (1985). Instead, the issue is what contacts with the forum state are evidenced by the parties' prior negotiations and the future consequences contemplated by the contract:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id* at 479 (citation omitted).

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F3d 1011, 1016 (9th Cir 2008) (internal quotation marks and citation omitted), *cert denied*, 555 US 1171 (2009). The record reveals that the substance of the underlying real estate transaction that forms the basis of this lawsuit was spelled out in the PSA signed by representatives of Right Buy and Mt. Helix on

March 13, 2014, several weeks before Mackie and Hudler began communicating with each other. Moreover, a practical and pragmatic evaluation of the jurisdictional significance of the PSA reveals that it contemplates no ongoing actions or obligations in Oregon by Mackie or Right Buy. The PSA is governed by and construed in accordance with Florida law, relates to 369 Properties located exclusively in Florida, describes a real estate closing handled by an escrow agent and title company located in Florida, and contains representations and warranties about those Properties made by Right Buy (identified in the PSA as operating out of Michigan and Florida) to Coast Equities (identified in the PSA as a Nevada LLC).

To counter the obvious connections the PSA and its parties have with Florida and Michigan, Coast Equities contends that substantial harm from the breach of contract would be felt in Oregon. In support, it relies heavily on an Oregon case that found personal jurisdiction in Oregon appropriate over a Massachusetts resident where an Oregon corporation made a payment on behalf of that party regarding a villa located in Mexico. *Resorts Mktg., Inc. v. Zuckerman*, 52 Or App 589, 628 P2d 770 (1981).

The difficulty with this argument is that Coast Equities has provided scant evidence that allows this court to determine where the economic harm of the transaction would actually be felt. Coast Equities asserts that its members are "limited liability companies organized in Oregon and Nevada" (docket #88, p. 2) who, in turn, are "citizens of Oregon and California." Complaint, ¶ 2. However, the record is silent both as to the actual interest in Coast Equities held by an(y) LLC organized in Oregon and as to the interest in any such Oregon LLC(s) held by an Oregon entity or individual. Hudler is the manager of Coast Equities and a resident of Oregon and avers that Coast Equities' principal place of business is in Oregon. Hudler Decl., ¶ 1. However,

neither Hudler's residence nor Coast Equities' principal place of business illuminates the inquiry concerning the likely location of any economic harm resulting from the transaction.

Finally, Coast Equities argues strenuously that "purposeful direction" of communications into Oregon by Mackie and Right Buy supports the exercise of specific personal jurisdiction. "Purposeful direction" is normally the test used regarding tort claims, not regarding contract claims. The fraud claim in this case alleges that, during due diligence review, the LLC defendants misrepresented the costs of improvements necessary for certain of the Properties to be habitable, and misrepresented that at least 200 of the Properties were rented to tenants who were paying rent on a regular basis. Complaint, ¶¶ 13-14. The thrust of Coast Equities' "purposeful direction" argument is that defendants' communications were directed at Hudler, an Oregon resident and, therefore, defendants knew that the effects of their intentional acts would be felt in Oregon. As discussed above, the record does not establish that the effects of breaching the PSA would be felt in Oregon. Similarly, the record does not establish that the economic effects of any misrepresentations would be felt in Oregon, much less that Mackie discerned that would be the case.

Accordingly, the record does not support the exercise of jurisdiction over Mackie or Right Buy.

### 3. Exercise of Jurisdiction Unreasonable

Even if this court concluded that Mackie's communications with Hudler were sufficient to satisfy the first two elements of the test for establishing personal jurisdiction, that would be a hollow victory for Coast Equities. The record reveals a compelling case that exercising personal jurisdiction over defendants in this case would be unreasonable. The reasonableness of the exercise of personal jurisdiction is dependent on seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co., Inc. v. Watts*, 303 F3d 1104, 1114 (9th Cir 2002) (citation omitted).

### i. Purposeful Injection

If a court determines that a defendant has purposefully directed its actions at the forum state, then the purposeful injection factor favors the plaintiff. *See CollegeSource*, 653 F3d at 1080 (citation omitted) ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection."). As discussed above, Coast Equities relies primarily upon communications between its Oregon manager, Hudler, and Right Buy's owner, Mackie. Hudler is not a party to the PSA and was representing Coast Equities, identified as a Nevada LLC, in negotiations with Michigan LLCs selling Properties located in Florida. The PSA is governed by Florida law, concerns properties located exclusively in Florida, and contemplates no ongoing obligations in Oregon. Thus, this factor favors jurisdiction in Florida, not Oregon.

### ii. Burden on Defendant

Mackie is a citizen of the United Kingdom who resides in the Republic of South Africa. Both he and Right Buy, a Michigan LLC, would be burdened by defending this case in Oregon. However, given the current "'advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past.'" *Id* (alterations in original; additional citations omitted), quoting *Menken v. Emm*, 503 F3d 1050, 1060 (9th Cir 2007); *see also Tech Heads, Inc. v. Desktop Serv. Ctr., Inc*., 105 F Supp2d 1142, 1052 (D Or 2000) ("air travel is neither

prohibitively expensive nor time consuming, and [the defendant] has retained local counsel"). Moreover, there is little difference whether Mackie must defend this case in Oregon as opposed to either Michigan or Florida.  Accordingly, this factor is neutral.

### iii.  Sovereignty Concerns

Florida has an obvious interest in this case as the location of the subject Properties. Meanwhile, Michigan has an interest in this case as the place of incorporation of the LLC defendants and the forum of related litigation.  However, the concern over sovereignty is whether Oregon's exercise of jurisdiction over an out-of-state resident would conflict with the law of the defendant's state.  *Panavision*, 141 F3d at 1323.  Based on the current record, this court cannot ascertain whether any conflict of law exists between Oregon, Florida, or Michigan that would adversely impact Oregon's sovereignty interest.  Accordingly, this factor is neutral.

### iv.  Forum's Interest in Adjudication

The Ninth Circuit assumes that a forum state "'maintains a strong interest in providing an effective means of redress for its residents tortiously injured.'"  *Id*, quoting *Gordy v. Daily News, L.P.*, 95 F3d 829, 836 (9th Cir 1996).  However, it is unclear exactly what stake in Coast Equities is held by Oregon citizens, and the Oregon citizen (Hudler) on whose contacts with defendants Coast Equities relies so heavily is not a party to the case.  At the same time, both Florida and Michigan have strong interests in adjudicating this dispute.  Florida is the location of the369 Properties at issue, and Michigan is the state in which the defendant LLCs were formed and has already assumed jurisdiction over a case involving the same properties at issue in this case. Thus, this factor favors adjudication in either Michigan or Florida, not Oregon.

///

///

### v. __Efficient Judicial Resolution__

Efficient judicial resolution focuses on the location of the evidence and witnesses. This factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id* (citation omitted). However, the claims in this case center on 369 Properties located in Florida and, in part, concern assertions of misrepresentations about the habitability and lack of maintenance of, as well as the existence of certain liens and title defects on, those Properties. Additionally, a Michigan state court has already assumed jurisdiction over an action involving those same properties. Thus, this factor favors adjudication in either Michigan or Florida, not Oregon.

### vi. __Burden on Plaintiffs__

Coast Equities will be burdened by litigating this case in Michigan or Florida. However, "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole Food Co, Inc.*, 303 F3d at 1116 (citation omitted). Accordingly, this factor is neutral.

### vii. __Alternative Forum__

This case could have been brought in either Michigan or Florida.

### viii. __Conclusion__

Weighing these seven considerations, defendants present a compelling case that the exercise of personal jurisdiction over them in Oregon would be unreasonable. Accordingly, defendants' motions to dismiss based on lack of personal jurisdiction should be granted.

## II. __Venue__

As an alternative to dismissal for lack of personal jurisdiction, all defendants seek dismissal based on improper venue, or at the very least, a stay pending resolution of the litigation

in Michigan.  Coast Equities contends that this action is properly brought in Oregon, resists any

effort to dismiss this case and does not request a transfer of venue.

### A.  **Legal Standard**

Venue is the "geographic specification of the proper court or courts for the litigation of a

civil action that is within the subject-matter jurisdiction of the district courts."  28 USC

§ 1390(a).   An action may be brought in a judicial district in which :  (1) "any defendant resides,

if all defendants are residents of the State in which the district is located;" (2) "a substantial part

of the events or omissions giving rise to the claim occurred, or a substantial part of property that

is the subject of the action is situated;" or (3) "any judicial district in which any defendant is

subject to the court's personal jurisdiction."  28 USC § 1391 (b)(1)-(3).  Oregon is clearly not a

proper venue under two of these venue provisions.  Not all defendants reside in Oregon and the

369 Properties that are the subject of this action are located exclusively in Florida.

As to the last provision, for venue purposes, a defendant corporation resides in "any

judicial district in which it is subject to personal jurisdiction at the time the action is

commenced."  28 USC § 1391(c)(2).  As discussed above, none of the defendant LLCs are

subject to personal jurisdiction in Oregon.  Mackie, who is apparently domiciled and resides

outside of the United States, may be sued in any judicial district, but that does not control where

the remaining defendants may be sued.  "[A] defendant not resident in the United States may be

sued in any judicial district, and the joinder of such defendant shall be disregarded in

determining where the action may be brought with respect to the other defendants."  28 USC

§ 1391(c)(3).[3]  Martin Greer and Steve Greer are subject to suit in Florida.  28 USC § 1391(c)(1)

---

[3]  Assuming he is domiciled and resides for venue purposes outside of the United States, the same rule applies to Grace.

("a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which the person is domiciled").

Thus, venue is proper in this district only if "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 USC § 1391(b)(2). They did not. At best, Coast Equities has established that a series of telephone and email communications concerning the purchase of the Properties by Coast Equities took place between its manager, Hudler, and Right Buy's owner, Mackie, between late March and late April 2014. Ultimately, however, the parties parted ways without closing the real estate transaction that first brought them together. Even assuming that Hudler was in Oregon when those communications took place does not establish that a substantial part of the events forming the bases of this case took place in Oregon. The events and omissions that form the basis of Coast Equities' claims are alleged failures to close the PSA due to title defects, maintenance issues, and misrepresentations concerning certain liens, all concerning Florida real estate. This case involves no Oregon real estate, no Oregon title defects, no Oregon property maintenance issues, and no Oregon liens. Any alleged misrepresentations relate fundamentally to the PSA, a contract involving issues concerning the transferability, habitability, and lack of clear title or other defects existing on Properties in Florida. In sum, no events or activities took place in Oregon. Accordingly, this court concludes that venue is improper in this district.

Mackie and Right Buy suggest that venue "more likely lies in Florida," without expressly requesting transfer of this case there. Because there appear to be no impediments to refiling this case in Michigan or Florida, and because Coast Equities has failed to show that venue is proper here, this case should be dismissed based on improper venue.

///

## RECOMMENDATIONS

For the reasons stated above, Defendants Right buy Properties, LLC, and Ronald Mackie's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Improper Venue (docket #44) and the Motion to Dismiss for Lack of Jurisdiction, Improper Venue, and *Forum Non Conveniens* by Defendants Investus (Michigan) LLC and the Exit Strategy LLCs (docket #77) should be GRANTED and a judgment should be entered dismissing this case based on lack of personal jurisdiction over any appearing defendant and improper venue.

This court need not address any other basis for transfer or dismissal raised by the parties.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, March 09, 2015.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED  February 18, 2015.


                                                                s/ Janice M. Stewart
                                                                _____
                                                                Janice M. Stewart
                                                                United States Magistrate Judge